FILED & JUDGMENT ENTERED
Steven T. Salata

Mar  10  2015

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **Redf Marketing, LLC** | ) | |
| | ) | **Case No. 12-32462** |
| | ) | **Chapter 11** |
| Debtor. | ) | |
| | ) | |
| **The Finley Group,** | ) | |
| *Liquidating Agent for* | ) | |
| *Redf Marketing LLC* | ) | |
| | ) | |
| Plaintiff, | ) | **Adversary Proceeding** |
| | ) | **No. 14-03267** |
| v. | ) | |
| | ) | |
| **State of North Carolina** | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

In this adversary proceeding, plaintiff, The Finley Group, Liquidating Agent for

Redf Marketing, LLC, seeks to recover funds transferred by Redf Marketing, LLC,

debtor, to the State of North Carolina under 11 U.S.C. §§ 542, 544, 548, and 550 as well

as the remedies available under the Uniform Fraudulent Transfer Act as codified in the

North Carolina General Statutes at sections 39-23.1 *et seq.*  This matter is currently

before the Court on the State's motion to dismiss brought pursuant to Federal Rules of

Civil Procedure 12(b)(1), (2), (4), (5), and (6), made applicable in this proceeding by

Bankruptcy Rule 7012(b).  For the reasons set forth below, the State's motion is denied.

**Facts[1] and Procedural History**

Debtor operated an advertising and marketing agency in Charlotte, North Carolina

and was wholly owned by Daniel and Sara Roselli (the Rosellis).  Debtor and the Rosellis

were sued in a trade secret lawsuit, which resulted in a judgment against them in August

2012.  The judgment creditors then successfully sought to put debtor into involuntary

bankruptcy on October 12, 2012.  The involuntary bankruptcy caused debtor to lose one

of its primary customers and rendered it unviable.  Debtor chose to liquidate in Chapter

11 and converted the case on October 29, 2012.  Plaintiff was appointed liquidating agent

as part of debtor's bankruptcy plan.

In the current action, plaintiff seeks to recover three transfers made by debtor to

the State of North Carolina.  The first two transactions constitute payments made by

debtor to satisfy personal tax debts of the Rosellis amounting to $64,470.  The third

transaction, in the amount of $2500, was paid to the State Treasurer as a Local

Government Commission Fee owed by another entity owned by the Rosellis pertaining to

financing for a real estate transaction.

Plaintiff filed its complaint on October 10, 2014, naming the State of North

Carolina as defendant and serving both North Carolina Attorney General Roy Cooper and

the "North Carolina Department of Revenue Attn: Officer, Director or Managing Agent."

Doc. No. 3, at 2.

---

[1] As this matter is before the Court on a motion to dismiss, the facts of the complaint are
presumed to be true.

## Parties' Positions

First, the State asserts that plaintiff sued the wrong party and thus did not affect proper service.  According to the State, two state agencies—the Department of Revenue and the Treasurer—were the transferees for purposes of § 550.  The State argues that the agencies are the proper defendants and the only entities from which plaintiff may recover.  By choosing the wrong defendant, the State contends that plaintiff failed to serve the proper parties in accordance with Bankruptcy Rule 7004(6) and North Carolina Rule of Civil Procedure 4(j)(4)(b).

Next, the State argues, without citation, that plaintiff failed to join necessary parties.  According to the State, the Rosellis are necessary because a recovery in plaintiff's favor would result in the Rosellis incurring increased tax liability.  Additionally, the State contends that, as owners of debtor, equity requires the Rosellis to answer for their actions and are therefore necessary parties.

The State further asserts that plaintiffs have failed to plead a claim for which relief can be granted.  Specifically, the State argues that (1) plaintiff's claims are barred by sovereign immunity, (2) plaintiff failed to plead fraud with particularity, and (3) the complaint fails to meet the standards established by the Supreme Court of the United States in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

## Analysis

As to the State's first argument, that plaintiff failed to effectuate proper service, it would appear that if the state agencies are the only proper defendants then, under Bankruptcy Rule 7004(6) and North Carolina Rule of Civil Procedure 4(j)(4)(b), the two

3

agencies did not receive proper service.  However, at the hearing on this matter, the State

conceded that if North Carolina were a proper defendant then plaintiff's service was

adequate.  Accordingly, the resolution of this particular issue turns on whether plaintiff

may recover an avoidable transfer from North Carolina.

An avoided transfer may be recovered from "(1) the initial transferee of such

transfer or the entity for whose benefit such transfer was made; or (2) any immediate or

mediate transferee of such initial transferee."  11 U.S.C. § 550(a).  The bankruptcy code

does not dictate which transferee must bear the burden of the avoidance; rather, "[i]t is

clear from the language of 11 U.S.C. § 550 that the [p]laintiff has discretion in his choice

of defendants. *Bakst v. United States (In re Kane & Kane)*, 475 B.R. 251, 265 (Bankr.

S.D. Fla. 2012); *see also Cox v. Grube (In re Grube)*, 500 B.R. 764, 772 (Bankr. C.D. Ill.

2013) ("It is the trustee's option whom to sue for recovery." (citing *Levit v. Ingersoll*

*Rand Fin. Corp. (In re V.N. Deprizio Constr. Co.)*, 874 F.2d 1186, 1194 (7th Cir.1989))).

To maintain an avoidance action, a plaintiff "need only name as a defendant one of the

persons or entities potentially liable for recovery under § 550."  *Stiles v. Vaden (In re*

*Bechtold)*, No. 10-30013, 2014 WL 585304, at *6 (Bankr. W.D.N.C. Feb. 14, 2014)

(citing *Grube*, 500 B.R. at 772).

Lurking beneath this issue is the parties' dispute regarding the role the State as an

entity played in these transactions.  The State assumes it was a mediate transferee

protected by subsection 550(b), making the state agencies, entities not named in

plaintiff's complaint, the initial transferees.[2]  By taking this position that the agencies are

---

[2] In making this argument, the State has essentially agrees that it was some sort of
transferee.  Consequently, plaintiff could choose to assert the recovery provisions of
section 550 of the bankruptcy code against it.  *Grube*, 500 B.R. at 772.

the initial transferees, the State asserts that it is entitled to the good faith defense available

under subsection 550(b).  Plaintiff, on the other hand, asserts that the state *agencies* were

but mere *agents* of the State, making the State the initial transferee and the good faith

defense inapplicable.

"The term 'initial transferee' is not defined in the Bankruptcy Code."  *Bowers v.*

*Atlanta Motor Speedway, Inc. (In re Se. Hotel Props Ltd. P'ship)*, 99 F.3d 151, 154 (4th

Cir. 1996).  Yet, as explained by controlling Circuit precedent, "a party cannot be an

initial transferee if he is a 'mere conduit' for the party who had a direct business

relationship with the debtor."  *Id*. at 155 (quoting *Lowry v. Sec. Pac. Bus. Credit, Inc. (In*

*re Columbia Data Prods.)*, 892 F.2d 26, 28 (4th Cir.1989)).  Put differently, "the term

transferee as used in § 550 must mean something different from possessor or holder or

agent."  *Id*. at 156 (citations and quotation marks omitted); *see also Bonded Fin. Servs.,*

*Inc. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir. 1988) ("When A gives a check to

B as agent for C, then C is the 'initial transferee'; the agent may be disregarded.").

Instead, "to constitute the 'initial transferee' of property under § 550(a) of the Bankruptcy

Code, a person or entity must have exercised legal dominion and control over the

property."  *Bowers*, 99 F.3d at 156.  An initial transferee is the first party with "the right

to put the money to one's own purposes."  *Bonded*, 838 F.2d at 893.

The State's attempt to draw an artificial distinction between it and its agencies is

unpersuasive in the context of an action to recover an avoided transfer under the

Bankruptcy Code.  State agencies are "inanimate, artificial creature[s] of statute," *High*

*Rock Lake Partners, LLC v. N.C.D.O.T.*, 735 S.E.2d 300, 303 (N.C. 2012) (citation

omitted), rather than individual, sovereign entities.  An action against "an agency of the

State where the interests or rights of the State are directly affected is in fact an action against the State." *Prudential Ins. Co. of Am. v. Powell*, 8 S.E.2d 619, 622 (N.C. 1940) (citation omitted). Thus, for purposes of recovery under section 550, payment to a state agency is tantamount to payment to the State itself. Funds paid to an agency are, in reality, being paid to the State because it is the State that exercises dominion and control over those funds. Meaning, the State is the initial transferee of the funds at issue here.

Even if the State were correct that we could somehow parse the relationship between the agency and its sovereign, the State would remain the initial transferee in this action. Assuming *arguendo* that the two are distinct, state agencies are, as the term suggests, agents of the state. And, as mere conduits, agents cannot be considered initial transferees. *Bonded*, 838 F.2d at 893.

As the State conceded at the hearing, service on the State was proper. The State's motion on whether the State was a proper defendant and the related notice issues is thus denied.

The State next asserts that plaintiff failed to join necessary parties, specifically the Rosellis, and the proceeding should therefore be dismissed. According to the State, "[i]f Plaintiff should be determined to recover monies paid on behalf of the Rosellis to Revenue, or on behalf of Red City Properties, LLC, then the Rosellis, as 100 percent owners of those entities, should be required to answer to the [State], and the Court, for their actions." The State further claims that to allow recovery against it without holding the Rosellis responsible "would be inequitable." In a somewhat alternative argument, the State contends that the Rosellis are necessary out of fairness to them and for their protection in case this proceeding results in additional tax liabilities being levied against

them.

The State's argument seems to again miss that plaintiff "need only name as a defendant one of the persons or entities potentially liable for recovery under § 550." *Bechtold*, 2014 WL 585304, at *6 (citing *Grube*, 500 B.R. at 772). While the State may feel that is inequitable, "the language of 11 U.S.C. § 550" permits such as result. *Kane*, 475 B.R. at 265. Moreover, the State's equitable argument and "protest that 'it just isn't fair' to saddle it with judgment" has gained little, if any, traction in courts that have previously taken up the issue. *Leonard v. First Commercial Mort. Co. (In re Circuit Alliance, Inc.)*, 228 B.R. 225, 236 (Bankr. D. Minn. 1998) ("The Defendant is not undeserving of sympathy; it stands alone here, strictly liable, while the party or parties who gained in-hand benefit from the avoided transfers were not subjected to the same onus. Unfortunately for the Defendant, however, it has no relief from the application of § 550(a) at the Plaintiff's behest . . . . The earlier courts that construed § 550 slathered 'equity' into the theory of their construction, and proposed an escape from liability by giving the benefit of generalized considerations of 'fairness' to parties deemed relatively innocent in a chain of transfers. The developing rule, however, properly rejects this approach-on the ground that assuming equitable power to override a clear statutory imposition of liability could leave judicially-carved exceptions swallowing the legislative branch's rule." (citations omitted)).

The State further argues that plaintiff's claims should be dismissed under Rule 12(b)(6) for failure to plead a claim for which relief may be granted. First, the State asserts that plaintiff's claims are barred by sovereign immunity. Second, the State contends that plaintiff failed to plead fraud with particularity. And, third, the State argues

that plaintiff failed to allege sufficient facts related to debtor's insolvency.[3]  For clarity,

the Court will address each of the State's arguments in turn.

Turning first to the State's assertion of sovereign immunity, the Bankruptcy Code

provides that "sovereign immunity is abrogated as to a governmental unit to the extent set

forth in," *inter alia*, sections 542, 544, 548, and 550.  11 U.S.C. § 106(a)(1); *see also*

*Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 377-78 (2006) ("The ineluctable conclusion,

then, is that States agreed in the plan of the Convention not to assert any sovereign

immunity defense they might have had in proceedings brought pursuant to 'Laws on the

subject of Bankruptcies . . . .'  In ratifying the Bankruptcy Clause, the States acquiesced

in a subordination of whatever sovereign immunity they might otherwise have asserted in

proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts."

(citations omitted)); *Zazzali v. Swenson (In re DBSI, Inc.)*, 463 B.R. 709, 719 (Bankr. D.

Del. 2012) (concluding in a proceeding brought under a state law based on the Uniform

Fraudulent Transfer Act that a number of states', *including North Carolina's*, "sovereign

immunity was abrogated with respect to fraudulent transfer actions brought under §

544(b)(1) and incorporated State Laws, and that Congress provided the trustee with rights

that are greater than those possessed by the unsecured creditor upon whom a § 544(b)(1)

claim is based").  Because plaintiff's claims are based on code sections to which

Congress expressly abrogated the use of sovereign immunity as a defense, the State's

motion on this issue is denied.

The State next argues that plaintiff's claim for fraud fails to meet the pleading

requirements Federal Rule of Civil Procedure 9(b), requiring that "[i]n alleging fraud or

---

[3] The State raised this argument for the first time in its reply brief, Doc. No. 9, and relied
heavily on this contention at the hearing.

mistake, a party must state with particularity the circumstances constituting fraud or

mistake." According to the State, "[p]laintiff's complaint fails to identify which persons

or entities were defrauded by the alleged transfers, or how it was that they were

defrauded." While that may be the case, the State's reliance on Rule 9 is misplaced. As

recently explained by the U.S. District Court in this judicial district, "a claim for

fraudulent transfer involves no allegations of fraud on the part of the defendant

transferee, but only by the non-party transferor." *Bell v. Disner*, No. 3:14CV91, 2014

WL 6978690, at *6 (W.D.N.C. Dec. 9, 2014). Thus, "where a complaint does not allege

that the defendants themselves committed fraudulent acts, Rule 8 applies," rather than the

particularity requirement of Rule 9(b). *Id*. Therefore, the State's motion on this issue is

denied.

      Finally, the State argues that plaintiff's allegations that debtor was insolvent fail

to meet the specificity standards of *Iqbal* and *Twombly*. As made clear by our Supreme

Court, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556

U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at

556). "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

      Plaintiff's complaint alleged the financial standing of debtor during the time

period the transfers occurred. The provided financial figures indicate debtor was indeed

insolvent. Plaintiff further claimed that debtor was not paying its debts as they came due.

By including specific reference to financial figures, plaintiff has pled more than a mere

conclusory statement that debtor was insolvent.  If accepted as true, plaintiff's assertions

state a facially plausible claim for relief.  Accordingly, the State's argument that plaintiff

failed to meet the *Iqbal* and *Twombly* pleading requirements must fail.

Having found all of the State's arguments meritless, its motion to dismiss is

**DENIED**.

**SO ORDERED**

This Order has been signed
electronically. The Judge's
signature and Court's seal
appear at the top of the Order.

United States Bankruptcy Court